### Eldorado Coal & Coke Company v. George Swan.

1.   PEREMPTORY INSTRUCTION—*when should not be given.*   A peremptory instruction should not be given where there is any evidence in the case tending to prove the plaintiff's cause of action.

2.   INSTRUCTIONS—*how construed.*   Instructions are to be taken, read and construed as one charge.

3. CONDUCT OF COUNSEL—*when impropriety of, will not reverse.* Objectionable actions and words will not reverse a judgment which appears substantially just upon the merits.

Action in case for personal injuries. Appeal from the Circuit Court of Saline county; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the February term, 1906. Affirmed. Opinion filed September 14, 1906.

E. E. DENISON, for appellant; W. F. SCOTT, of counsel.

LEWIS & THOMPSON, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case in the Circuit Court of Saline county, by appellee against appellant for a personal injury sustained by appellee while in the service of appellant, in its coal mine. Trial by jury. Verdict in favor of appellee and judgment on the verdict for $999.

The declaration consists of two counts based upon certain provisions of the Mines and Miner's Act. The first charges a wilful failure to maintain a good and sufficient light at the bottom of the shaft, so that persons coming to the bottom of the shaft might clearly discern the cage and objects in the vicinity thereof, and the second charges wilful failure to have stationed at the bottom of the shaft a competent man charged with the duty of attending to signals, preserving order and enforcing rules governing the carriage of men on the cage.

Appellant owned a coal mine and operated it by means of a vertical shaft and cage. The shaft was 407 feet deep, having at the bottom of it a sump 7 or 8 feet deep, and the cage was used in the shaft for the purpose of hoisting coal and raising and lowering men who worked in the mine. Appellee was an employee of appellant working in the mine, and the place where he worked was about 150 feet away from the shaft.

The men were accustomed to quit work for the day at four o'clock in the afternoon, at which time the engineer would blow the whistle to notify the men to assemble at the foot of the shaft for the purpose of being taken to the top. On the occasion of appellee's injury the whistle blew for the men to come out; he went to the foot of the shaft, being the first one to arrive. There was no one stationed there to "attend signals" and to perform the other duties imposed by the statute, and the evidence tends strongly to prove that there was not sufficient light to enable one to "clearly discern" the objects in the vicinity. Appellee fell into the sump and the cage came down on him, causing him to suffer great pain and wholly disabling him from work for four months, and probably permanently injuring him to some extent. He was an able-bodied man, thirty years old and was earning $2.23 a day.

Appellant asks for a reversal of the judgment, and complains of the rulings of the trial court in refusing to direct a verdict in favor of appellant; in admitting certain evidence on behalf of appellee; in the giving of improper instructions on behalf of appellee; in allowing appellee's counsel to make improper remarks to the jury during the argument; and in overruling appellant's motion for a new trial.

Section 28 (a) of the statute provides: "At every shaft, operated by steam power, the operator must station at the top and at the bottom of such shaft, a competent man charged with the duties of attending signals, preserving order and enforcing the rules governing the carriage of men on the cages. Said top man and bottom man shall be at their respective posts of duty at least a half an hour before the hoisting of coal begins in the morning, and remain for half an hour after hoisting ceases for the day."

(b) "As long as there are men under ground in any mine, the operator shall maintain a good and sufficient light at the bottom of the shaft thereof, so that per-

sons at the bottom may clearly discern the cage and objects in the vicinity.''

And section 33 provides that: ''For an injury to person or property, occasioned by any wilful violation of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby.''

''A wilful violation, within the meaning of the statute, signifies a conscious violation.'' ''An act consciously omitted is wilfully omitted, in the meaning of the word 'wilful,' as used in these enactments of our legislature relative to the duty of mine owners.'' Kellyville Coal Co. v. Strine, 217 Ill. 516 (528).

The evidence tends to prove every requisite to the right of recovery in this case, and where that appears, the court has no power, under the Constitution of the state, to direct a verdict in favor of defendant. St. Louis National Stock Yards v. Godfrey, 101 Ill. App. 40 (47).

In this connection counsel strenuously insist, that if it be that the light at the bottom of the shaft was not sufficient to meet the requirements of the statute, there is no evidence tending to prove wilfulness on the part of appellant in that respect; and they say: ''There is not one word of evidence in the record tending to prove that the light, as provided, was insufficient when there was no accumulation of smoke, or when the oil had not burned low.''

The testimony tends to prove that the general superintendent had control over the lamp, the oil and all conditions affecting the light, and it was his duty to see that the lamp was supplied with oil so that it would make the proper light, and to see that conditions did not accumulate in that vicinity so as to obscure the light to the extent that persons could not clearly discern the surrounding objects. And the testimony tends to prove not only that it was his duty to do and know concerning these matters, but that he had opportunity both to do and know, and in this state of case it was

Eldorado Coal & Coke Co. v. Swan.

for the jury to say whether his omission was a "conscious omission," *i. e.*, wilful, or whether it was an unconscious omission, *i. e.*, mere negligence. Whatever view may be taken of this feature of the case, it is not of controlling importance. The violation of the statute charged in the second count is conclusively proven. The admitted facts establish it, and the proof of one good count is sufficient to support a general verdict.

The only pretense of compliance with the statute requiring a competent man to be stationed at the bottom of the shaft, and to remain there from a half hour before beginning operations in the morning until a half hour after ceasing operations for the day, charged with the duty of attending signals, etc., was to impose these duties upon the only driver in the mine, to be attended to at such times as he was not otherwise engaged, and an undertaking on the part of the general superintendent to perform this duty when not engaged in other duties. The driver's primary duty was to look after his mule and cars and haul all the coal mined from all parts of the mine and cage it, and return empty cars to the miners at their respective working places; and the primary duty of the superintendent was to oversee and superintend the entire operation of the mine. They neither gave, were required to give, nor undertook to give their time and attention to the discharge of the duty of attending to the shaft as the statute requires of one stationed to that duty. Their primary and principal duties took them all over the mine, and at the very hour of quitting time, when the men were assembling to be taken out through the shaft, they were both thirty-five or forty feet away and did not know that appellee had fallen into the sump until after the cage had come down on him.

It is too clear to call for discussion, that appellee was within the class protected by the statute, and the testimony tends strongly to prove and the jury was abundantly warranted in finding that appellant's vio-

lation of the statute occasioned his injury, and it goes without saying that the damages sustained were "direct damages" to him.   Willis Coal and Mining Co. v. Grizzell, 100 Ill. App. 480 (483).   The trial court did not err in refusing to direct a verdict in favor of appellant, nor did the court err in any of its rulings with respect to the admission of evidence.

Counsel for appellant complains of certain conduct on the part of counsel for appellee during the trial, in respect to the repeated asking of the witnesses certain objectionable questions, and the making of certain remarks in argument to the jury.   This complaint is not without just cause, and if the case were a closer case on the controlling facts as to its merit, we would feel called upon to treat this complaint as of serious consequence.

The court gave 15 instructions on behalf of appellee. These are all challenged by counsel for appellant, and in nearly every instance the challenge as applicable to the particular instruction standing alone is well taken, but the court gave 26 instructions on behalf of appellant, and these cured all the errors in all of appellee's instructions, except the 14th and 15th.   That is, when all these instructions are read and considered together as one series, they state the law upon the whole case as favorable to appellant as the law will warrant, and leave appellant no just cause of complaint, except as to the 14th and 15th above mentioned.

These instructions are not complete, and do not sufficiently limit and circumscribe the jury in the assessment of damages; and counsel for appellant asked no instruction on that subject, and therefore these are not cured.   If the case were a close case on the controlling facts as to its merit, or if the damage assessed had been such as is frequently assessed in such cases, these instructions would demand a reversal.

The record discloses this to be a wholly meritorious case.   Under the evidence no reasonable jury could have found otherwise than for appellee, and the

amount of damages is such as to make it apparent to the court that the jury was not misled to the prejudice of appellant by the instructions or anything that was done or said during the trial.

It is apparent to this court, that by the verdict and judgment of the Circuit Court substantial justice has been done between the parties. In such case slight errors neither call for nor justify a reversal.

The judgment of the Circuit Court is affirmed.

*Affirmed.*